**BHG** | **BUNTROCK HARRISON GARDNER**

2158 N. Gilbert Road, Suite 119
Mesa, Arizona 85203-2111
Telephone    (480) 664-7728
Facsimile     (480) 668-3110
**Shane D. Buntrock, Esq. – SBN 019693**
Email        shane@bhglaw.com
*Attorneys for Defendant Ruby J. Farms;*
*Anthony Comella and Norma Comella*

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Timothy, Stewart & Lekos Seed Company, Inc., a California corporation DBA TS&L Seed Company,<br><br>    Plaintiff,<br><br>vs.<br><br>Ruby J. Farms, L.L.C., an Arizona limited liability company; Anthony J. Comella and Norma R. Comella, husband and wife; et al.,<br><br>    Defendants. | Case No.: CV-21-02225-PHX-DJH<br><br>**FIRST AMENDED ANSWER TO COMPLAINT, COUNTERCLAIMS, AND THIRD-PARTY COMPLAINT**<br><br>*(Assigned to the Honorable Diane J. Humetewa)* |
| Ruby J. Farms, L.L.C., an Arizona limited liability company,<br><br>    Counterclaimant,<br><br>vs.<br><br>Timothy, Stewart & Lekos Seed Company, Inc., a California corporation DBA TS&L Seed Company; John Does I-X; Jane Does I-X; Black Corporations I-X; and Grey Partnerships I-X,<br><br>    Counterdefendants. | |

|   |   |
|---|---|
| 1 |   |
| 2 | Ruby J. Farms, L.L.C., an Arizona limited liability company, |
| 3 | Third-Party Plaintiff, |
| 4 | vs. |
| 5 | A. Oseguera Company, Inc., a foreign business corporation, |
| 6 |   |
| 7 | Third-Party Defendant. |

Defendants Ruby J. Farms, LLC (hereinafter "Ruby Farms"), Anthony J. Comella, and Norma R. Comella, by and through undersigned counsel, hereby respond to Plaintiff Timothy, Stewart & Lekos Seed Company, Inc.'s Complaint as follows, and denies each and every allegation not specifically admitted herein:

1. Defendants admit the allegations set forth in Paragraph 1 of the Complaint.

2. Defendants admit that Ruby Farms is an Arizona limited liability company, with its principal place of business in Santa Cruz County, Arizona. Defendants admit that Ruby Farms has transacted business in Yuma County, Arizona. As to the remainder of the allegations in Paragraph 2, Defendants are presently without sufficient information to form a reasonable belief as to the truth of the allegations further set forth in Paragraph 2 of the Complaint and, therefore, deny the same.

3. Defendants admit that Anthony J. Comella and Norma R. Comella are husband and wife and residents of Santa Cruz County, Arizona. As to the remainder of the allegations in Paragraph 3, Defendants are presently without sufficient information to form a reasonable belief as to the truth of the allegations further set forth in Paragraph 3 of the Complaint and, therefore, deny the same.

4. The statements set forth in Paragraph 4 of the Complaint are legal conclusions that do not require a response. To the extent the statements are determined to

be factual allegations directed to Defendants, Defendants deny the same.

5. Defendants are presently without sufficient information to form a reasonable belief as to the truth of the allegations set forth in Paragraph 5 of the Complaint and, therefore, deny the same.

6. Defendants admit the allegations set forth in Paragraph 6 of the Complaint.

7. Defendants are presently without sufficient information to form a reasonable belief as to the truth of the allegations set forth in Paragraph 7 of the Complaint and, therefore, deny the same.

8. Defendants are presently without sufficient information to form a reasonable belief as to the truth of the allegations set forth in Paragraph 8 of the Complaint and, therefore, deny the same.

9. Defendants are presently without sufficient information to form a reasonable belief as to the truth of the allegations set forth in Paragraph 9 of the Complaint and, therefore, deny the same.

10. Defendants are presently without sufficient information to form a reasonable belief as to the truth of the allegations set forth in Paragraph 10 of the Complaint and, therefore, deny the same.

11. Defendants are presently without sufficient information to form a reasonable belief as to the truth of the allegations set forth in Paragraph 11 of the Complaint and, therefore, deny the same.

12. Defendants deny the allegations set forth in Paragraph 12 of the Complaint.

13. The statements set forth in Paragraph 13 of the Complaint are legal conclusions that do not require a response. To the extent the statements are determined to be factual allegations directed to Defendants, Defendants deny the same.

14. The statements set forth in Paragraph 14 of the Complaint are legal conclusions that do not require a response. To the extent the statements are determined to

be factual allegations directed to Defendants, Defendants deny the same.

## AFFIRMATIVE DEFENSES

15. As and for an affirmative defense, Defendants assert Plaintiff's Complaint fails because the alleged contract is unconscionable.

16. As and for an affirmative defense, Defendants assert deficiency of personal guarantee to bind the marital community.

17. As and for an affirmative defense, Defendants assert failure to state a claim upon which relief can be granted.

18. As and for an affirmative defense, Defendants assert failure of consideration.

19. As and for an affirmative defense, Defendants assert fraud or misrepresentation.

20. As and for an affirmative defense, Defendants assert breach of contract.

21. As and for an affirmative defense, Defendants assert mistake.

22. As and for an affirmative defense, Defendants assert frustration of purpose.

23. As and for an affirmative defense, Defendants assert impossibility.

24. As and for an affirmative defense, Defendant asserts lack of privity.

25. As and for an affirmative defense, Defendants assert failure of conditions precedent.

26. As and for an affirmative defense, Defendants assert substantial performance.

27. As and for an affirmative defense, Defendants assert setoff.

28. As and for an affirmative defense, Defendants assert unclean hands.

29. As and for an affirmative defense, Defendants assert waiver.

30. As and for an affirmative defense, Defendants assert material breach.

31. Defendants have not yet had a chance to conduct appropriate discovery in this matter. So as not to waive any other applicable defenses set forth in Rules 8 and 12,

Federal Rules of Civil Procedure and any other defenses, at law or in equity, which may be shown to apply in the future, all defenses set forth in these rules are incorporated herein by this reference.

### PRAYER

WHEREFORE, having fully answered the Complaint, Defendants pray that the same be dismissed, that Plaintiff take nothing thereby, and that Defendants be awarded its costs and reasonable attorney fees pursuant to the applicable statutes and case law, and for such other further relief as the Court may deem just and proper.

### COUNTERCLAIMS

Defendant/Counterclaimant Ruby J. Farms, LLC (hereinafter "Ruby Farms"), for its Counterclaims against Timothy, Stewart & Lekos Seed Company, Inc. (hereinafter "TS&L"), alleges as follows:

### PARTIES AND JURISDICTION

32. Counterclaimant Ruby Farms is an Arizona limited liability company with a principal place of business in Santa Cruz County, Arizona.

33. Counterdefendant TS&L is a California corporation doing business as TS&L Seed Company.

34. Counterdefendants John Does I-X; Jane Does I-X; Black Corporations I-X; and Grey Partnerships I-X are unknown and are intended to be the fictitious names of additional person or entities including, but not limited to, any and all additional persons, corporations or entities who may be liable for the claims asserted by Ruby Farms. Once their identities are known, leave to amend will be sought to have their true names added.

35. Subject matter jurisdiction is proper pursuant to 28 U.S.C. § 1332 as the parties have diversity of citizenship and the amount in controversy exceeds $75,000.00.

36. TS&L is doing business in Arizona and is subject to personal jurisdiction in this Court.

37. This Court has general and specific jurisdiction over TS&L as TS&L has had continuous and systematic contacts within Arizona and within this District and the claims of Ruby Farms arise from TS&L's actions within Arizona and this District, and that Ruby Farms have suffered damages in Arizona and within this District as a result of TS&L's action directed to and at Ruby Farms.

38. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(c).

## GENERAL ALLEGATIONS

39. Ruby Farms is engaged in the business of farming.

40. Ruby Farms is operated and managed by its principal, Anthony J. Comella.

41. At all times relevant, Rick Linkenhoger was a duly authorized agent and representative of TS&L.

42. Ruby Farms previously purchased watermelon seed/transplants from Rick Linkenhoger and TS&L for a separate farming project in Sonora, Mexico in November, 2020.

43. Ruby Farms had no prior relationship with Rick Linkenhoger or TS&L before November, 2020.

44. TS&L is a seed distributor and not a seed producer.

45. Upon information and belief, TS&L purchases the seed it sells from companies that produce seed.

46. Rick Linkenhoger represented to Ruby Farms that he had substantial experience with watermelon farming and that farming conditions in Yuma County, Arizona were suitable for watermelon farming.

47. Linkenhoger further represented to Ruby Farms that TS&L had good quality watermelon seeds available for sale.

48. Between February 2021 through April 2021, Ruby Farms contracted with TS&L on several occasions to purchase 3 separate strains of watermelon seed produced by

6

Syngenta.

49. Upon information and belief, Ruby Farms purchased the "Captivation," "Excursion," and "Fascination" watermelon seed strains produced by Syngenta through TS&L.

50. Linkenhoger recommended and represented that instead of planting the seeds in a field in Yuma County, Arizona, the Syngenta seeds should be sent to a nursery in Palm Desert to be grown for 45 days and later transplanted into the ground in Yuma County, Arizona as part of Syngenta's "Full Count Plant Program."

51. Under the "Full Count Plant Program," Ruby Farms purchased watermelon transplants that were sprouted from the purchased watermelon seeds in a nursery and later replanted into Ruby Farms' fields in Yuma, Arizona.

52. Upon information and belief, Linkenhoger chose 3 nurseries located in California (Headstart Nursery, Inc.) and Georgia (Fowler Plant Company and Mobley Greenhouse, Inc.).

53. Initially Linkenhoger represented that all seeds were to go to California nursery.

54. Upon receipt of the first delivery of watermelon plants, the plants arrived were yellow, thin wispy, at that point breaking off.

55. Ruby Farms objected but were assured by Linkenhoger that watermelon plants would be fine.

56. Linkenhoger further represented that other watermelon plants would be grown by a nursery in Georgia.

57. When plants were received from Georgia they too were– yellow and did not look good.

58. Ruby Farms complained and objected but were assured by Linkenhoger that the plant conditions were acceptable as the recommended treatment was to try and kill the

plant and it will be okay.

59. Upon information and believe, Linkenhoger chose the nurseries for the transplants based on his knowledge and experience and subsequent problems with prior nurseries.

60. Ruby Farms was never shown the seed bags or seed labels that were purchased from TS&L.

61. Ruby Farms did not see the seed before it was sent to the nurseries chosen by TS&L.

62. Ruby Farms had no input into the selection of nurseries chosen to grow the watermelon transplants, and at all times acted on the knowledge and advice of TS&L and its agent.

63. Ruby Farms has no knowledge of the conditions or treatment of plants at any of the nurseries chosen by TS&L.

64. Linkenhoger and TS&L arranged all shipping from the nurseries to Ruby Farms' fields in Yuma County, Arizona.

65. When watermelon plants arrived in limp, wispy, yellow condition Linkenhoger assured them this condition was normal and there was no need to reject the plants.

66. Ruby Farms later discovered that the transportation of the plants was a four-day trip and Ruby Farms has no way of knowing the conditions of the watermelon plants when they were placed for shipment as compared to when they arrived.

67. Upon information and belief, Linkenhoger and TS&L used 3 different shipping or transportation companies to transport the sprouted seeds from the nurseries to Ruby Farms' fields.

68. Ruby Farms has no knowledge of the conditions or treatment of plants by any of the transportation companies chosen by TS&L.

69. Ruby Farms reasonably relied upon the representations made by TS&L in making the decision that Ruby Farms would purchase watermelon seeds/transplants from TS&L.

70. Ruby Farms reasonably relied upon the representations made by TS&L in allowing TS&L to choose all nurseries to sprout and grow the watermelon transplants for 45 days.

71. Ruby Farms reasonably relied upon the representations made by TS&L in allowing TS&L to choose all transportation companies to transport the sprouted watermelon transplants to Ruby Farms' fields in Yuma County, Arizona.

72. Ruby Farms reasonably relied upon the representations made by TS&L that the condition of the watermelon plants was normal and not to reject the plants and that the plants would produce as represented.

73. Ruby Farms paid freight cost invoices received directly from the transportation companies selected by TS&L.

74. In anticipation of the delivery of the watermelon transplants, Ruby Farms contracted with a local farmer who had substantial previous experience growing watermelon plants in Yuma, Arizona to perform the necessary land preparation for replanting the watermelon transplants.

75. Through the local farmer, two fields were leased and prepared, which were referred to as the North Field and the South Field.

76. Upon information and belief, Linkenhoger made a trip from Texas to Ruby Farms' fields in Yuma, Arizona to observe the planting conditions. Linkenhoger made no objection to the manner in which the ground was prepared or the conditions under which the watermelon transplants were being planted.

77. While the planting was taking place, there were so many compliments paid to the grower by TS&L.

78. Ruby Farms drove the fields and inspected how the crop was doing and based on the health of the crop in the beginning additional aces were added to the South field.

79. After planting was completed and the plants started maturing, Ruby Farms asked why there was no fruit on the plants. TS&L then started accusing the grower of something wrong.

80. In anticipation of the delivery of the watermelon transplants, Ruby Farms contracted with several companies to purchase several thousand wooden pallets and bins (pop out 48" by 36" cardboard boxes), which resulted in substantial expense to Ruby Farms.

81. Ruby Farms, in reliance on the crop and the representations from TS&L, arranged for a warehouse, employees, trucks, and purchased 20,000 bins in addition to pallets, and arranged for three loads a day based on TS&L projections.

82. Ruby Farms relied on TS&L's projections of $15,000.00 per load for the watermelon crop.

83. After the watermelon transplants were planted in Ruby Farms' fields, Linkenhoger from TS&L made several trips from Texas to Yuma, Arizona to look at the plants in Ruby Farms' fields.

84. During these trips Linkenhoger made several statements to Ruby Farms that the watermelon plants in the North Field were growing well, looked great, and fruit should appear soon.

85. The watermelon plants did not grow in the South Field and died within weeks of planting. No fruit was ever produced from the South Field.

86. Linkenhoger offered no explanation as to why the watermelon transplants did not grow in the South Field but continued to travel to Arizona to focus on the North Field.

87. The watermelon plants in the North Field continued to grow and matured

into fully grown watermelon plants.

88. Ruby Farms questioned Linkenhoger as to why the watermelon plants in the North Field were not producing substantial fruits. On multiple occasions, Linkenhoger advised to give the plants more time and they would bear fruit.

89. Despite Linkenhoger's repeated representations, only a small amount watermelon fruit bloomed in the North Field.

90. The North Field was expected to produce 800 bins of watermelon per day during harvest.

91. The max production of watermelon fruit from the North Field was 200 bins of watermelon per day during harvest.

92. After Ruby Farms again questioned why the watermelon plants in the North Field were not producing substantial fruits, Linkenhoger immediately stopped communicating with Ruby Farms and made no additional trips to Yuma.

93. On August 19, 2021, Ruby Farms ordered a plant specimen diagnostic report through Yuma Plant Health Clinic regarding the watermelon plants in the North Field.

94. The diagnostic report concluded that the watermelon plants were not diseased, but it was a probably poor transplants/poor establishment/nutritional issue. The report did not provide a conclusive reason as to why the plants did not bear fruit.

95. When the expected yield of fruit did not come, Ruby Farms mitigated damages by stopping purchases of wooden pallets and selling previously purchased pallets.

96. With no substantial fruit yield from the North Field and ongoing expenses of field hands, Ruby Farms suspended its Yuma, Arizona field operations and abandoned the North and South Fields.

97. Ruby Farms sustained foreseeable and actual damage, representing the amount paid to TS&L for the Syngenta seed/transplants.

98. Ruby Farms sustained foreseeable and actual damage, representing the

amount paid to transportation companies for transporting the watermelon transplants from the nurseries to the fields in Yuma, Arizona.

99. Ruby Farms sustained foreseeable and actual damage, representing the amount paid to pallet and bin companies in expectation of the watermelon plants producing a substantial yield of watermelon fruit.

100. In addition to the purchase of the seed, Ruby Farms has incurred substantial damages for the cost of contracting with a local farmer in Yuma, Arizona, land leasing and preparation, planting, irrigation, and harvesting costs. Ruby Farms has also incurred additional damages in the form of lost profits expected from the sale of watermelon fruit.

101. Each preceding allegation is incorporated into each claim for relief alleged below.

## FIRST CAUSE OF ACTION

### Breach of Contract

102. Ruby Farms restates and incorporates the foregoing paragraphs of its Counterclaim as if fully set forth herein.

103. Ruby Farms contracted with TS&L for the purchase of watermelon seeds/transplants. The basis of the bargain was that TS&L would supply seed/transplants capable of growing watermelon plants that would yield watermelon fruit consistent with the representations of TS&L's sale agent, Rick Linkenhoger.

104. Implied in that agreement was the obligation to act in good faith and not deprive either party of the benefit of their agreement. This meant delivering watermelon transplants capable of growing watermelon plants that would produce substantial marketable fruit for sale.

105. The "Limitation of Warranties" as provided in the Full Count Plant Program Terms and Conditions are non-negotiable, go to the basic performance characteristics of the product, and enforcement of these boilerplate terms would be unconscionable.

106. Linkenhoger expressly represented that the watermelon plants growing in Ruby Farms' North Field looked healthy and would produce fruit.

107. TS&L materially breached its contract with Ruby Farms by providing watermelon seed/transplants that did not yield marketable fruit for sale.

108. As a direct and proximate result of material breaches, Ruby Farms incurred direct and consequential damages in an amount as shall be proven at trial.

109. Because this matter arises out of contract, express or implied, Ruby Farms are entitled to recover their reasonable attorneys' fees pursuant to A.R.S. § 12-341.

## SECOND CAUSE OF ACTION

### Breach of Implied Warranty of Merchantability

110. Counterclaimants restate and incorporate the foregoing paragraphs of its Counterclaim as if fully set forth herein

111. TS&L delivered watermelon seed/transplants that were not capable of producing watermelon fruit. The watermelon transplants delivered to Ruby Farms by TS&L and its contractors, including multiple nurseries and transportation companies, were not fit for the ordinary purposes for which such goods are used because they are not capable of producing marketable fruit for sale.

112. TS&L materially breached the implied warranty of merchantability causing damages to Counterclaimants in an amount to be proven at trial.

113. Because this matter arises out of contract, express or implied, Counterclaimants are entitled to recover their reasonable attorneys' fees pursuant to A.R.S. § 12-341.01.

## THIRD CAUSE OF ACTION

### Breach of Implied Warranty of Fitness for a Particular Purpose

114. Counterclaimants restate and incorporate the foregoing paragraphs of its Counterclaim as if fully set forth herein

115.   TS&L knew that Counterclaimants intended to use the watermelon plants to grow fruit for market and its agent and representative, Rick Linkenhoger, observed the conditions under which the watermelon seeds were sprouted, transplanted, and grown.

116.   TS&L knew that Counterclaimants were relying on Linkenhoger's skill and judgment to select suitable strains of watermelon seed for growing in Yuma County, Arizona that would yield substantial fruit for harvest. Watermelon plants that are incapable of producing a fruit crop are not suitable for this purpose.

117.   TS&L materially breached the implied warranty of fitness for a particular purpose causing damages to Counterclaimants in an amount to be proven at trial.

118.   Because this matter arises out of contract, express or implied, Counterclaimants are entitled to recover their reasonable attorneys' fees pursuant to A.R.S. § 12-341.01.

## FOURTH CAUSE OF ACTION

### Breach of Implied Covenant of Good Faith and Fair Dealing

119.   Counterclaimants restate and incorporate the foregoing paragraphs of its Counterclaim as if fully set forth herein.

120.   Arizona law implies a covenant of good faith and fair dealing into every contract. The implied covenant of good faith and fair dealing prohibits a party from doing anything to prevent the other party to a contract from receiving the benefits and entitlements of their agreement.

121.   TS&L's conduct, as described in the paragraphs above, was done in such a way to harm Counterclaimants and deprive it of the benefit of its purchase of watermelon seed/transplants from TS&L when its agent stopped communicating with Counterclaimants.

122.   TS&L has breached the implied covenant of good faith and fair dealing by depriving Counterclaimants of the reasonably expected benefits and entitlements of the

parties' agreement, as a result of which plaintiff has been damaged in an amount to be proven at trial.

123. As a direct and proximate result of the breach of the covenant of good faith and fair dealing, Counterclaimants have incurred direct and consequential damages in an amount as shall be proven at trial.

124. Because this matter arises out of contract, express or implied, Counterclaimants are entitled to recover their reasonable attorneys' fees pursuant to A.R.S. § 12-341.01.

## FIFTH CAUSE OF ACTION

### Fraudulent Inducement of Contract

125. Counterclaimants restate and incorporate the foregoing paragraphs of its Counterclaim as if fully set forth herein.

126. TS&L made representations to Counterclaimants that the watermelon seed/transplants it sold were capable of growing a watermelon plant that yielded substantial fruit under the conditions known to and observed by TS&L's agent and representative.

127. These representations were false because the watermelon plants provided by TS&L were not capable of growing a watermelon plant that yielded substantial fruit under the conditions known to and observed by TS&L's agent and representative.

128. TS&L's representations were material and were intended by TS&L to induce, and did induce, Counterclaimants to purchase the watermelon seed/transplants.

129. Counterclaimants were entitled to rely on TS&L's representations and did reasonably rely on TS&L's representations in purchasing the subject watermelon seed/transplants and in incurring the expense of planting the transplants, including the costs of contracting with a local farm in Yuma, Arizona, land leasing and preparation, planting, irrigation, and harvesting costs.

130. Counterclaimants have tendered the watermelon crops to TS&L's agent, Rick

Linkenhoger, who stopped responding to the Counterclaimant's attempts to contact him when the watermelon plants did not produce marketable fruit.

131. Counterclaimants are entitled to rescind its agreement with TS&L and to receive a refund of its purchase price in order to restore the parties to the status quo ante.

132. Counterclaimants were directly and proximately damaged by its reasonable reliance on TS&L's misrepresentations in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION

### Negligent Misrepresentation

133. Counterclaimants restate and incorporate the foregoing paragraphs of its Counterclaim as if fully set forth herein.

134. TS&L made representations to Counterclaimants that the watermelon seed/transplants it sold were capable of growing a watermelon plant that yielded substantial fruit under the conditions known to and observed by TS&L's agent and representative.

135. These representations were false because the watermelon plants provided by TS&L were not capable of growing a watermelon plant that yielded substantial fruit under the conditions known to and observed by TS&L's agent and representative.

136. TS&L's representations were material and were intended by TS&L to induce, and did induce, Counterclaimants to purchase the watermelon seed/transplants.

137. Counterclaimants were entitled to rely on TS&L's representations and did reasonably rely on TS&L's representations in purchasing the subject watermelon seed/transplants and in incurring the expense of planting the transplants, including the costs of contracting with a local farm in Yuma, Arizona, land leasing and preparation, planting, irrigation, and harvesting costs.

138. Counterclaimants have tendered the watermelon crops to TS&L's agent, Rick Linkenhoger, who stopped responding to the Counterclaimants attempts to contact him when the watermelon plants did not produce marketable fruit.

139. Counterclaimants are entitled to rescind its agreement with TS&L and to receive a refund of its purchase price in order to restore the parties to the status quo ante.

140. Counterclaimants were directly and proximately damaged by its reasonable reliance on TS&L's misrepresentations in an amount to be determined at trial.

## PRAYER

WHEREFORE, Counterclaimants pray for judgement against TS&L as follows:

A. For recission of the contract with TS&L

B. Alternatively, for an award of damages in an amount to be proven at trial, but not less than $406,807.23;

C. For reasonable attorneys' fees pursuant to A.R.S. § 12-341.01;

D. For plaintiff's taxable costs; and

E. For such other and further relief as the Court deems just.

## DEMAND FOR JURY TRIAL

Defendant/Counterclaimant Ruby Farms, demands a trial by jury on any issue triable of right by a jury herein.

## THIRD-PARTY COMPLAINT

Third-Party Plaintiff Ruby J. Farms, LLC (hereinafter "Ruby Farms"), for its Third-Party Complaint against A. Oseguera Company, Inc. (hereinafter "Oseguera"), alleges as follows:

## PARTIES AND JURISDICTION

1. Third-Party Plaintiff Ruby J. Farms, LLC is an Arizona limited liability company with its principal place of business in Yuma, Arizona.

2. Third-Party Defendant Oseguera is a foreign business corporation, licensed and doing business in Arizona, with its principal place of business in California.

3. This Court has personal jurisdiction over Ruby J. Farms, LLC and Oseguera.

4. This Court has subject matter jurisdiction over Ruby J. Farms' claims in this

1  matter.

2      5.    Venue is proper.

3      6.    The allegations made in Ruby Farms' Counterclaim supra are incorporated herein by this reference.

## GENERAL ALLEGATIONS

7.  Ruby Farms hired Oseguera to transplant watermelon seedlings ("seedlings") onto 206 acres (the "fields") located in San Luis, Yuma County, Arizona.

8.  The transplants never grew, and the crop production was a complete loss.

9.  Nothing Ruby Farms did, or failed to do, through its employees, officers, or agents, caused or otherwise contributed to the crop failure.

10. The crop failure was the result of the condition of the seedlings at the time they were delivered for transplanting and/or the improper manner in which they were transplanted by Oseguera.

## NEGLIGENCE

11. The seedlings were negligently transplanted into the fields by Oseguera in such a manner that they could not survive or otherwise produce healthy watermelons.

12. The complete crop failure was either the result of the negligent transplanting by Oseguera and/or the poor condition of the seedlings at the time they were delivered to the fields by Plaintiff/Counterdefendant Timothy, Stewart & Lekos Seed Company, Inc., a California corporation d/b/a TS&L Seed Company (hereinafter "TS&L").

13. The trier of fact will be asked to determine to what extent the negligence of Oseguera, and/or the negligence of TS&L, caused or otherwise contributed to the failure of the watermelon crop and the resulting damages to Ruby Farms.

14. Ruby Farms suffered significant pecuniary damages as a result of the negligence of Oseguera, the amount of which will be decided at the trial by the trier of fact.

15. Ruby Farms is entitled to an award of its attorneys' fees pursuant to A.R.S.

§ 12-341.01, in that this is a contested action arising out of a contract.

## PRAYER

WHEREFORE, Third-Party Plaintiff Ruby J. Farms, LLC, an Arizona limited liability company, prays for the following relief:

    A.    A judgment against Third-Party Defendant for reasonable compensatory damages;

    B.    Taxable costs incurred herein;

    C.    An award of its attorneys' fees pursuant to A.R.S. § 12-341.01; and

    D.    All other relief the Court deems equitable and proper.

DATED this 3rd day of May 2022.

BUNTROCK HARRISON & GARDNER LAW, PLLC

/s/ Shane D. Buntrock
Shane D. Buntrock, Esq.
shane@bhglaw.com
Steven E. Harrison, Esq.
steve@bhglaw.com
2158 N. Gilbert Road, Suite 119
Mesa, Arizona 85203-2111
*Attorneys for Defendant Ruby J. Farms*

**E-FILED and a COPY E-MAILED via CM/ECF this 3rd day of May 2022, to:**

Barry L. Olsen, Esq.
bolsen@lwslaw.net
Law Offices of Larry W. Suciu, PLC
101 E. Second Street
Yuma, Arizona 85364
*Attorneys for Plaintiff Timothy, Stewart & Lekos Seed Company, Inc., a California corporation d/b/a TS&L Seed Company*

/s/ Kimberlee Nelson
Paralegal